Mr. McClendon raises two issues. The first is an issue it has in common with his next that Mr. McClendon made clear and unequivocal requests to represent himself, yet those requests were denied by the court below based on a rationale having nothing to do with whether his requests were freely, knowingly, and intelligently made. The second issue, which is present only in this appeal, is that the trial court failed to fully comply with Supreme Court Rule 431B, also known as the Zaire Principles, during the voir dire, and therefore his conviction must be vacated because the evidence in this case was so closely balanced that the guilty verdict may have resulted from the error. In light of the fact that our argument on self-representation basically shares the same actual legal basis as in the next case, 0376, I would propose to begin by briefly addressing the Rule 431B issue first, unless, of course, the panel directs otherwise. This issue, by the way, is reviewed on the de novo standard of review. With respect to the second issue, the Rule 431B issue, the State has rightfully conceded that the trial court did not comply with the rule, and the parties agree that this issue is reviewable under the plain error doctrine only if this court finds that the evidence in the case was closely balanced. We also agree, the parties also agree, that the State probably satisfied the first two elements of the charge of home invasion. There is little question that Mr. McClendon entered the home of I.C. McConnell and Joseph Johnson without authority, and it is probable that he had a knife on his person when he did so. The disagreement, then, is focused all over the third and final element of the charge. The State had to prove beyond a reasonable doubt that Mr. McClendon threatened the imminent use of force against McConnell and or Johnson, while armed with a dangerous weapon. That weapon had to be the knife, since Mr. McClendon was acquitted of the charge of home invasion with a firearm. The jury's determination on this third and last point was based entirely on witness credibility. It came down to a decision of whether the testimony of State witnesses McConnell and Johnson, who were alleged victims, was more credible on this point than the contrary testimony of Mr. McClendon's girlfriend, Nicole Bradley, and the statements of Mr. McClendon himself, although they didn't testify but were introduced through the testimony of police officer Andrew Savitz. Obviously, this jury found McConnell and Johnson more credible, but it must have been a close call, in part because it clearly disbelieved their account that he was armed with a revolver, in part because their accounts were not consistent. For example, Johnson said that Mr. McClendon had a black .357 revolver. McConnell testified that he had a silver revolver. McConnell stated that Mr. McClendon pulled the knife out of his pants when he came into the second bedroom where they were. Johnson testified that he already had a knife in his hand when he entered. Johnson testified that when Mr. McClendon came in the bedroom, he said that he was going to kill them. McConnell specifically testified that he had not threatened to kill them until the very end of their encounter when they were in the kitchen, and he told her never to call his girlfriend again or he would kill her. She testified that he was cursing and yelling the N-word at Johnson, something that Johnson did not include in his account. Although the State introduced a photo showing damage to a bedroom door in their apartment, curiously neither of the State's principal witnesses testified that Mr. McClendon had actually damaged it. Officer Sabins contradicted Johnson's claim that he told the police that the revolver was black. After McColl testified that she had seen the gun in Bradley's apartment on a previous occasion, Sabins testified that she never provided him with this obviously relevant information, which very probably caused the jury to acquit Mr. McClendon of the firearms charge. Sabins' description of Mr. McClendon's statements to him was consistent with Bradley's testimony, primarily that when they went back to McConnell's apartment after the initial falling out, it was for the purpose of retrieving the cell phones they had accidentally left there. According to McConnell, Mr. McClendon threatened them because he was furious that Johnson had pushed Bradley, his girlfriend, his pregnant girlfriend, in the stomach. Yet though McConnell and Johnson denied that this had ever actually occurred, so it raises the obvious question of why he would violently threaten retaliation against them for something that never happened. All of the witnesses agreed that McConnell and Johnson had good reason not to like Mr. McClendon because he had tried to get another man to sleep with McConnell on a prior occasion. In fact, that was what made Johnson so angry enough to kick him out of their apartment. Therefore, they had motive to retaliate against Mr. McClendon. Considering that the jury did not believe McConnell and Johnson on the firearms charge, the jury could not have been entirely convinced by their story. The main difference between the general home invasion evidence and the home invasion with the firearm evidence was the fact that a knife was recovered but a gun was not, and Mr. McClendon admitted that he had a knife on his person, but he said it was for defensive purposes. It could not have been because McConnell and Johnson's credibility was so much greater than that of Bradley and Mr. McClendon. Therefore, we submit that on this third element, the crucial third element of the home invasion charge, that evidence was not overwhelming but was so closely balanced that the guilty verdict may have resulted from the court's failure to correctly question and screen the prospective juries on the Zaire principles under Rule 431B. It follows then that the defendant's conviction must be vacated and the cause remanded. Realize basically this is going to be a judgment call on your part whether or not the facts were close enough or not, but that's basically our summation of why we believe that they were closely balanced. With respect to the self-representation issue, which of course I will be following up in the subsequent appeal, let me outline it this way. The following salient facts cannot reasonably be denied here. First, Mr. McClendon made numerous clear and unequivocal requests to represent himself. He can't get much more clear than, quote, I want to represent myself. Secondly, the trial court did not comply with Supreme Court Rule 401A, nor did it make any other inquiry to determine whether Mr. McClendon's requests were freely, knowingly, and intelligently made. Instead, crucial point three, its response was to give him the equivalent of a short law school quiz on basic trial procedure, which Mr. McClendon failed, and he explicitly stated, the court explicitly stated on the record, that he would not be permitted to represent himself because he lacked sufficient knowledge of the law. There is no gainsaying effect that this was the wrong legal standard to apply. The case law is very clear on this point. The correct legal standard is whether the request was freely, knowingly, and intelligently made, which the court did not apply. Finally, to the extent that the court happened to ask Mr. McClendon two of the questions required by Rule 401A at times other than in response to his request to represent himself, Mr. McClendon's answers showed that he did understand the nature of the charges against him, and he did understand that he had the sentence and the right to counsel. So because it cannot deny any of these dispositive points, what we see in this appeal, the state is basically resorting to calling attention to the fact that Mr. McClendon was trying to present a meritless legal theory to the court. Well, we don't deny that the so-called sovereign citizen movement theory is a meritless legal theory, but that's totally beside the point. The state argues that because he was trying to present this meritless legal theory, it was somehow made his request not truly knowing and intelligent, but obviously we dispute that. Thank you, Your Honor. Thank you, Counsel. Counsel? May it please the Court. Good morning, Your Honors. Counsel? My name is Erin Wilson-Langler, and I appear on behalf of the state. As the defendant noted in his opening, the first assignment of error is essentially identically presented in both of these appeals. So as the defendant did, I will address the second issue in case number 0375 first. As the defendant noted, the state does concede that the trial court failed to address the rule 431B. However, this violation was not plain error. As explained in the briefing, defendant must establish first-pronged plain error in order to prevail with respect to his rule 431B argument. In considering whether the evidence is closely balanced, this Court must conduct a qualitative common-sense analysis of the evidence presented at trial, taking into account the credibility of the witnesses.        to prevail with respect to his rule 431B argument. or, more importantly, the nature of the evidence. In an attempt to establish that the evidence is closely balanced, I will talk for a moment about the difference between a message made by the defendant and the fact that the author presented evidence to the witness, inottigating breaks out of three articles in the testimony. The message was a white notice, with Jiegan Smith, prosecution executive, mentioning both 好吃 H 설명 peppers cooking under police law. Judged in this case to be defrauding of little evidence, the witness, as reportedly indicated, is presented with an undisputed indication of recommendation or intent to celebrate achievement.   and possession of a deadly weapon, are undisputed the victim's motivation to lie. First, McConnell and Johnson, the victims, consistently testified that the defendant lunged at Johnson while wielding a knife multiple times during this encounter in an attempt to stab him. Moreover, both consistently testified that Johnson threatened to kill them both. Now, the defendant points to an alleged inconsistency in the timing of this verbal threat, but Johnson stated that this verbal threat occurred while he was backing him down the hallway, whereas McConnell testified that this verbal threat occurred as the defendant was leaving. Arguably, the defendant was leaving as they were being backed down the hallway, and so the difference in timing in these verbal threats would be a difference of mere seconds, if at all. Moreover, regardless of the exact timing of these verbal threats, the consistent testimony about the defendant's lunges towards Johnson in an attempt to stab him was sufficient to establish the third element, which only requires the threat of imminent use of force. By attempting to stab Johnson and lunging towards him with a knife, the defendant was threatening force, that force being stabbing. Second, any testimony about the gun is irrelevant because, as the defendant notes, he was not convicted of being in possession of a gun at the time. Nevertheless, it's not uncommon for witnesses and victims to leave out minor details and statements to officers. Here, McConnell might not have thought that the fact that she had previously seen the gun before was relevant, or maybe she forgot because it happened previously. Either way, this is just a mere collateral fact to the crime charged and does not necessarily bear on her credibility in this case. And finally, there was no doubt that there was bad blood between Johnson and the defendant. However, simply because a person has reason to dislike another does not mean that they are going to fabricate allegations of home invasion. When viewing the evidence in context and in total, particularly the defendant's own statements which corroborate Johnson and McConnell's testimony in several respects, the state's theory that the defendant unlawfully entered Johnson and McConnell's home, wielded a knife at them, attempted to stab Johnson, and threatened to kill them both is eminently clear from the facts. And for these reasons, the evidence was not closely balanced, and the Rule 431B error was therefore not plain error. Turning to the first issue, which is presented in both Appeals 0375 and 0376, parties agreed that this error was forfeited. However, the state acknowledges that the Supreme Court in People v. Baez has held that second problem plain error occurs when a defendant's request to proceed pro se is erroneously denied. The passage of the issue is simply whether the trial court erred by denying the defendant's request to dispense with his defense counsel. Now, with respect to the standard of review, the defendant consistently argues that review is entirely de novo in this case. To the contrary, in both Baez and People v. Burton, the Supreme Court held that the determination of whether a defendant has made a knowing and intelligent waiver of the right to counsel is an issue that is dependent upon the particular facts and circumstances of the case, including the background, experience, and conduct of the accused. The court in Baez further instructed that the trial court must determine whether the defendant truly wishes to represent himself and must, quote, indulge every reasonable presumption against the waiver of counsel, end quote. Consequently, the determination of whether a defendant has made a knowing and intelligent indication of the right to represent himself is an issue that is reviewed for an abuse of discretion. And this is particularly so in light of the fact that the right to proceed pro se is not absolute. As the court in Baez observed, the trial court may, in its discretion, retain counsel if the circumstances so warrant. Thus, our Supreme Court has made clear that the standard of review is abuse of discretion, not de novo. Here, the trial court did not abuse of discretion because the defendant's request to dispense with counsel was not a true indication of the right to self-representation. Instead, his requests were an attempt to dispense with any representation whatsoever because the defendant did not believe that the trial court had jurisdiction over him due to his sovereign citizen beliefs. Defendant believed that if anyone acted on his behalf, he would waive his sovereign immunity, which is why he wanted no one, not even himself, representing his interests in these proceedings. Pursuant to Baez and Burton, the trial court was required to take into account defendant's conduct and his explanation of these sovereign citizen beliefs in an attempt to determine whether defendant's requests to dispense with counsel were a true indication of the right to represent himself. Moreover, the court was required to indulge every reasonable presumption against the waiver of counsel. Applying these principles to this unique set of circumstances, it cannot be said that the trial court abused its discretion because a request for no representation is not a request for self-representation. In the alternative, if this court concludes that defendant's request to proceed per se was adequate, the trial court was also entitled to deny defendant's request because he had displayed seriously obstructionist misconduct throughout the proceedings below. In the proceedings below, defendant displayed seriously obstructionist misconduct through both verbal and profane outbursts and by refusing to attend or cooperate in the proceedings. Judge Schwartz actually stated on the record that defendant had displayed seriously obstructionist conduct throughout every proceeding before him. Indeed, his conduct was such that Judge Schwartz had defendant removed from the courtroom on at least two occasions and then subsequently had to confer with the attorneys about how to handle future outbursts should they occur during trial. Now, in appeal, defendant attempts to downplay his obstructionist behavior by arguing that he was only disruptive in connection with his request to proceed per se. However, as the Fourth District noted in People v. Woodson, and I quote, the defendant's behavior in the course of seeking to obtain self-representation may in itself be disruptive and thereby justify denying the motion to proceed per se. The record makes clear that defendant's obstructionist behavior was not an isolated event, as was the case in People v. Shealy, the case cited by defendant. It was instead a pattern of obstructionist behavior similar to that discussed in People v. Lewis, the case from the Supreme Court of Nebraska and a case that is cited in the appellee's brief. There, as here, the defendant had been removed from the courtroom on multiple occasions due to disruptive behavior, and the defendant in Lewis, as the defendant here, refused to participate in the proceedings at times. As in Lewis, the score should determine that defendant's behavior seriously obstructed the administration of justice in this case and should therefore affirm the trial court's decision to deny defendant's request to proceed per se. And I will reserve the rest of my argument with respect to this issue for the next appeal. Thank you, Your Honors. Thank you, Counsel. Counsel? Thank you, Your Honors. With respect to the Rule 431B issue, there's no point in belaboring this. The Court has the facts. You've heard our emphasis on the inconsistencies of the testimony. Obviously, the State is emphasizing that there were consistencies in the testimony of McConnell and Johnson as well. It's a matter of sorting through the facts and this Court making a judgment call with respect to whether or not you decide it was closely balanced or not. I would, however, point out just to correct one thing that there was a major discrepancy as to when Johnson and McConnell made their respective claims that Mr. McClendon made this threat to kill them. The trial transcript at page 312 says that, which is the testimony of Johnson, said that it was when he first came into the bedroom he made this threat, whereas McConnell testified that it came after Johnson had backed Mr. McClendon out of the bedroom into the kitchen and just before left said, do not ever call my girlfriend again or I'll kill you. And she specifically testified on cross-examination trial transcript at page 291 that he had not threatened to kill them prior to that ultimate, just before the departure. So there was a significant difference in the testimony there. With respect to the self-representation issue, the summation I gave you, these are undisputed facts. And accordingly, that's why we submit that the review has to be de novo. Yes, if it were a case that the Court had made the correct inquiry and to try to determine whether or not Mr. McClendon's request was freely, knowingly, intelligently made and had to make a judgment call about his answers to questions, then, yes, of course, a review of discretion would be the correct standard. But the facts in this case are not in dispute. The Court never made the inquiry. It made the wrong inquiry. It gave them, you know, it asked them about whether he knew what voir dire was and whether he knew what jury instructions were and decided, well, you don't know enough about the law to represent yourself. That's the wrong inquiry. Those facts are not in dispute. The question before this Court then is, is that the correct legal standard? And the answer is no, it's not. That's why we submit that this presents a question for de novo review because those facts are not disputed. The correct inquiry was never even made, and I think that's really the point that merits emphasis here. The State argues that, well, you know, basically the question here is not whether he wanted to self-represent himself, but because he wanted to represent himself for the purpose of not having any representation at all, that that presents a different question. But that is basically presenting pure speculation. We don't know what Mr. McClendon would have done if his request for self-representation had been granted. Yes, we do know that he was trying to present this meritless legal theory, but his decision to absent himself from the trial altogether came after his request to represent himself were denied. So for the State to say that, well, his only purpose in doing this was to not participate in the trial, we simply do not know that for a fact at all. And Sixth Amendment rights cannot be denied on the basis of speculation. I think that's a key point here. We have to go back to what is the correct standard. It's simply whether it's freely, knowingly, and intelligently made, and we simply did not have that in this case. And like the fact that I'm going to be basically presenting this argument in our next appeal more fully, I'll limit my remarks at this time to that, but we'll be revisiting that very shortly. Thank you, Your Honor. Thank you, Counsel. We appreciate the briefs and arguments of counsel, and we'll take the case under advisement, issue a ruling in due course. The next case call is similarly captioned. The number for the record is 515-0376. Counsel, you may proceed on that. Thank you, Your Honor. Once again, good morning. May it please the Court, Counsel. At the risk of creating a sense of deja vu with the Court, I do want to return to the issue. In this case, the sole issue that Mr. McClendon is raising is based on the proposition that he made clear an unequivocal request to represent himself, yet those requests were denied by the Court below based on a rationale having nothing to do with whether his request was knowingly and intelligently made. I will point out that the facts of each of these cases basically are intermingled. As a matter of fact, one of the requests came at a pretrial hearing that occurred in both cases. It was a joint pretrial hearing for both cases. Just so that the Court is aware of this, Mr. McClendon made one request. In the other case, I would like to represent myself on February 20, 2015, in a preliminary hearing. And in this case, he made an almost identical request in the hearing on May 15, 2015, a pretrial hearing in this case. So just to be very clear about this, in both cases, he made numerous requests to represent himself, but in both cases, there was a separate request where he literally used the words, I want to represent myself. So clear and unequivocal, you can't get much better than that. At this point, I would like to, you know, obviously, unless the Court has questions, kind of focus in on some of the arguments made by the State in its briefs in these two cases. Because I've already outlined it, you know, the basic facts. The requests were clear and unequivocal. Rule 408 was not complied with except in kind of an incidental and accidental way and incompleted that. And there were no other basic inquiries to determine whether Mr. McLennan was freely, knowingly, intelligently making that request. Instead, the Court very explicitly said that I'm not going to allow you to represent yourself because you don't have the proper knowledge of the law, which is clearly the wrong standard under the Woodson case, the Fisher case, the Ward case, and other cases that we cited in our briefs, which I don't think we need to go into all of that here unless the Court has a question on any of that. So when the State… Does the proposition the defendant put forward in both cases that he basically was a sovereign citizen, does that – what effect, if any, or what relevance, if any, does that have to the standard of whether a waiver is intelligently made? It has none, Your Honor, because the test is not whether – when they're saying knowingly and intelligently made, it doesn't have to do with intelligence about the law or about trial procedure. It's simply whether you possess the sufficient intelligence to know what the consequences of self-representation are. That's why in Rule 401A, the Court is directed to say, do you understand the serious nature of these charges? Do you understand the penalties? Do you understand you have a right to counsel? It's very basic, fundamental things like that that the Court needs to be sure the defendant has that kind of intelligence. It has nothing to do with whether or not the defendant has an intention to propose a far-fetched legal theory. And that's why, incidentally, one of the State's arguments in that regard is that, well, because this is so, you know, off the rails, what he was trying to propose, that the Court might deduce from that that maybe he lacked the mental capacity to make that decision. But that's not a leak or an inference that this Court can make, particularly in a context where the right inquiry was never made by the Court of Law. You know, if propounding America's legal theory was somehow evidence of, you know, lack of mental capacity, well, suffice to say there may have been occasions where I might have been in a little bit of trouble for that. Any lawyer might occasionally propound the legal theory that's a little bit, you know, creative or whatever. But that doesn't rise to the level of, you know, allowing the Court to then make this leak, which there's nothing in the record saying that the Court made that leak. It certainly doesn't allow this Court to make that leak and decide that, well, he may not have had the capacity to make that decision. Regarding the State's argument about seriously obstructionist conduct, the record indicates two occasions, not at least two occasions, two occasions in which Mr. McLennan was twice removed from the courtroom allegedly for being disruptive. And obviously we don't know what tone of voice was used from the record, et cetera. But it's at least debatable whether his conduct actually necessitated removal. But even giving the Court law the complete benefit of the doubt in that regard, the only conduct by Mr. McLennan that was even remotely disruptive or obstructionist was first of all purely verbal, and at least as far as the record reflects. And it occurred as a consequence of him trying to assert and then being denied his right of self-representation. In the subsequent hearings, as I outlined in our brief pretty thoroughly, things became a lot more civil. The Court had a constructive dialogue. There was even one occasion in which the Court even kind of conceded that maybe we got off on the wrong foot and, you know, maybe we should try to have a conversation. Remember, they had a perfectly civil conversation. So if you view the record as a whole, the idea that this type of obstruction rose to the exceptional level cited by, you know, as described by the Fourth District in cases like Woodson and Ward, it simply wasn't fair in this case. The facts do not merit that. And I would point out there's a little bit of a contradiction here between the State's argument where it says that, well, Mr. McLennan only wanted to do this because so that he could not participate in the trial. And, well, obviously, if in fact that, as I pointed out earlier, that's sheer speculation, but if in fact he had done that and did the exact same thing that he ended up doing, just absenting himself from the trial, well, that's clearly not going to be obstructing the trial, now, is it? I mean, it can't possibly obstruct the trial. And so, you know, he wouldn't have been any worse off, by the way, than as things actually occur. So you can't have it both ways and say he was being obstructionist to the point where we should have, you know, the court should have denied his request and at the same time saying that, well, he only did this because he didn't want to participate in the trial. And incidentally, the other point I make in response to that is that so what? You know, there's absolutely nothing in the case law that says that a defendant may not request to represent himself for the purpose of not putting on a defense. You know, I'm not saying that's a great legal strategy, but that's not the question. He has a right to do that. He absolutely has a right to do that if that's what he chooses to do. Very probably, reading this record as a whole, what, you know, if we're going to build on speculation, you probably want them to make this statement, I'm not, you know, I'm a sovereign citizen of the court. I have no jurisdiction. And then probably would have shut up. You know, that's my speculation, too. But looking at the overall tenor of his remarks, that seems to be where this was headed. In any event, you cannot deny six defendant rights based on speculation or based on the fact that he wanted to propound some type of far-flung legal theory or assert something that is simply not well-grounded in the law. That is absolutely not the standard. The standard is absolutely not whether you have the capacity to perform well in a courtroom, which seems to be the test that was applied here. It's simply whether you have the requisite intelligence to know that this is an intelligent decision that you want to make for whatever reason, no matter how bad. As the Seventh Circuit in one of the cases, the Imani case, said, the Sixth Amendment guarantees a mentally competent defendant the right to represent himself in a criminal trial no matter how foolish that choice may seem. And I think that's the key here to bear in mind. The correct test was not applied for these reasons. We respectfully ask this Court to vacate Mr. McLennan's conviction and remand for further proceedings. Thank you, Your Honors. Thank you, Counsel. Excuse me, Counsel. Good morning, Your Honors, Counsel. Again, I'm Mary Wilson-Legler, and I appear on behalf of the State. Just a brief point back to the standard of review. The review is not de novo. Baez and Byrne make eminently clear that the standard of review is abuse of discretion. This is because the trial court must look at the facts and circumstances surrounding the defendant's request to proceed pro se to determine whether it is a true invocation of the right to self-representation. And that gets to the point that the trial court's decision was not based on speculation. It was based on his observation of defendant's conduct and his observation and consideration of the defendant's theories about sovereign citizenship and so-called sovereign immunity. Your Honor asks what the effects of this sovereign citizen theory was on the defendant's ability to make a knowing and intelligent waiver of the right to counsel. And in the State's position, it does have an effect on the defendant's ability to make such a waiver because it goes to what the defendant's actual purpose for requesting to dispense with counsel was. As previously stated, the purpose was not so that he could represent himself in these proceedings because he felt he could do a good job at that. His purpose was to not have any representation at all. And we know this not through speculation, but from the fact the defendant specifically stated that he didn't want anyone to represent his interests because he did not want to waive his sovereign immunity. Well, if he – how does your argument stand up to the proposition, and it's speculative, it didn't happen, that if the court granted his request to represent himself and he made no defense, basically saying as a matter of law you don't have jurisdiction over me, how is that different than – I mean, that is a strategy of self-representation or representation. It may be insane, but it is an articulable, definable strategy. And I mean, I don't see how the decision as an alternate strategy to continue on the claim of not jurisdiction means that the person has not intelligently tried to make a – to waive the right of representation. Your Honor, if the defendant is seeking to have no representation whatsoever, then he is requesting to revert back to a situation where we have star chambers. And that's not what the American legal system is based on. At the cornerstone of the American legal system is the fact that defendants have the right to competent representation. Requesting to proceed with no representation whatsoever is not the same as either of the options provided by the Sixth Amendment, which is, you know, you can represent yourself or you can have representation provided for you. Well, let me rephrase the question because that doesn't quite answer it. Wouldn't a strategy of refusal to actively represent oneself in the conduct of the trial be a strategy, an articulable, clear strategy that can be knowingly and intelligently made? Well, Your Honor, matters of jurisdiction would typically be taken up pre-trial, and the Court had made clear that it had jurisdiction, so it's unclear how a defendant would present this theory at trial or later in the proceedings. I mean, it's not a – of course, it's not a winning theory, but it's not really a theory at all. The sovereign citizen theory has been widely rejected by courts throughout Illinois. That's true. My question to your opposing counsel was basically, what is the relevance of his theory of sovereign citizen to the intelligently made requirement of waiver of representation by counsel of representing oneself? And basically, it seems to me your answers are basically, well, the strategy is crazy, but that really doesn't go to the intelligently part. So if – so let me rephrase it, and I won't ask it again. If the purpose of an attempted representation of oneself is directed towards being a proponent of a strategy that has no basis in law or fact, is that a factor for the Court properly to consider in determining whether the defendant before the Court has knowingly and intelligently attempted to waive representation by counsel and wants to represent himself? Yes, Your Honor, it does. And Baez makes clear that that is a factor to be taken into consideration. Pursuant to Baez, the Court is required to consider the facts and circumstances surrounding the request to proceed per se, as well as the background experience and conduct of the accused. The defendant's expression of these theories would definitely fall within those parameters set forth by the Court in Baez, and that, again, goes to why standard of review is abuse of discretion as opposed to de novo, because the Court is required to take all of these different factors into consideration, particularly here, this theory that has no basis in American jurisprudence, and determine whether or not the defendant truly wishes to self-representation. Here, he didn't wish for self-representation. He wished for no representation at all and for these charges to be dismissed for lack of jurisdiction. So it's safe to say this is a very unique situation, but it just doesn't add up to a request to actually proceed on the Sixth Amendment right to self-representation. With respect to the Rule 401A requirements, this Court held in Peeble v. Vaughan that where a request to proceed per se is denied, Rule 401A admonishments become moot. Nevertheless, the trial court substantially complied with the rule and substantial compliance is sufficient. Rule 401A merely requires the trial court to inform the defendant of the charges against him, the applicable sentencing ranges, and of the right to counsel. The defendant has conceded that Judge Schwartz had informed him of the charges against him and the applicable sentencing ranges. The defendant was also actually aware of the right to counsel, as he already had appointed counsel representing him earlier in the proceedings, meaning that he cannot demonstrate the requisite prejudice to attain relief for the failure to explicitly state that fact. Thus, even though Judge Schwartz was not required to comply with Rule 401A, he nevertheless did so. And I think I've gotten to all the points about this issue that the State wished to present in this appeal, so unless there are no further questions, the State will respectfully request that this Court affirm the defendant's convictions. Thank you, Your Honors. Thank you, Counsel. Counsel? Thank you, Your Honor. Just briefly, a couple of points. The State and I apparently agree that the trial court's decision was not based on speculation. Indeed, it was not, but it was not based on some unspoken judgment by the court below that, based on the legal theory that was being presented, the court made a determination that Mr. McClendon was not, his waiver was not knowingly and intelligently made. Well, the court did say, and said it very clearly on the record, at the March 27, 2015 hearing, in response to another one of these requests, the court said that Mr. McClendon did not have, quote, the prerequisite ability to represent yourself in this courtroom. That was the basis. In another occasion, on May 5, 2015, in response to a renewed request, the court said that for Mr. McClendon to represent himself, quote, requires some knowledge of the law so you can do it in an effective manner, unquote. That's the basis for the court's decision. The court said it. It's on the record. The State is right. We don't have to speculate. It made its decision on the basis of the wrong, absolutely wrong criteria. And with respect to the claim that a refusal to represent herself would somehow restore star chambers, that's simply, you know, hyperbole. Obviously, if that were true, then every time that a defendant chose not to testify or produce any evidence, does that mean that it becomes a star chamber proceeding? No, that's not the case. What we're talking about here is someone wanting to assert his right to represent himself, possibly for the purpose of not putting on a defense. We don't really know that for a fact. Possibly for the purpose of trying to assert this legal theory and then not putting on a defense. But we don't know that for a fact. Again, you cannot deny the Sixth Amendment right based on speculation. You have to. Because this is such an unusual case, that's all the more reason to go back to our foundation, to go back to what is the proper inquiry, and to actually follow Rule 431B and ask the right questions. With respect to that, the State's argument that while it only applies to people who have been granted the right, not been denied the right, that, frankly, as I presented in our reply brief, that doesn't make any sense to say that the rule is intended to ensure that someone qualifies for a right only applies to people who, after the fact, have been granted the right. I don't understand that. And we distinguish the cases that basically point out the cases cited by the State on that point do not actually stand for that proposition, thankfully. With that, I believe I've covered the points we need to cover. And, again, we respectfully request this Court to vacate Mr. McLennan's conviction and remand for further proceedings accordingly. Thank you, Your Honor. Thank you, Counsel. We appreciate the briefs and arguments of counsel in both these cases, and we will take them under advisement.